IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KARICE GOSS,<br><br>Plaintiff,<br><br>v.<br><br>RECEIVABLES PERFORMANCE MANAGEMENT, LLC,<br><br>Defendant. | Case No. 19-cv-0642<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Karice Goss filed this lawsuit alleging that Receivables Performance Management, LLC violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") by failing to report her debt as disputed to a credit reporting agency. Goss moves for summary judgment in her favor. For the reasons stated below, Goss's motion for summary judgment [21] is granted.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the

1

adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). In doing so, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## BACKGROUND

Receivables Performance Management, LLC ("RPM") is a collection agency. (PSOF ¶3).[1] RPM is a debt collector as defined in 15 U.S.C. § 1692a(6) of the FDCPA. (PSOF ¶5). Plaintiff Karice Goss ("Goss") incurred a debt for a DirecTV consumer cable television account. (PSOF ¶7). That alleged debt is a "debt" as that term is defined at § 1692a(5) of the FDCPA. (*Id.*). RPM was hired to collect the alleged debt. (PSOF ¶9). In an attempt to collect the debt, RPM sent Goss one letter via ground mail and approximately three emails. (PSOF ¶10). After reviewing her credit report,

---

[1] The facts in this Background section are undisputed unless otherwise noted. Goss's Rule 56.1 Statement of Facts (Dkt. 23) is abbreviated as "PSOF." RPM's Rule 56.1 Statement of Facts (Dkt. 29) (which also includes its response to Goss's statement) is abbreviated as "DSOF".

2

Goss saw a past due account listed under RPM, [a] company she did not recognize. (PSOF ¶11). Goss called RPM on or about October 15, 2018. (*Id.*).

The transcript of the October 15, 2018 call is as follows:

> RPM: Thank you for contacting Receivables Performance Management. Good afternoon. This is Stephanie Chavez on a recorded line. How may I help you?
>
> Goss: Yes. I'm calling because I was going over my credit report, and Receivables Performance showed up but I don't know this Debtor, and I don't owe them a debt.
>
> RPM: Okay. Uh, do you have an account number, a reference number, or your Social so I can pull you up?
>
> Goss: Um, the account number is 56903467.
>
> RPM: Can I get your first and last name?
>
> Goss: Karice Goss.
>
> RPM: And your mailing address, Karice is 201 28th Avenue, right?
>
> Goss: Yes.
>
> RPM: Thanks. So I'm a debt collector. This is an attempt to collect a debt. Any information will be used for this purpose. Okay. DirecTV, the balance of $417.42, right?
>
> Goss: Um, no. I don't know anything about that debt, but I'll go check my records and see.

(DSOF ¶21).

RPM has a policy that "if a consumer is directly disputing a debt, the agents are trained to mark it with a result code CDIS, which would indicate that the consumer is disputing the account." (PSOF ¶19). When a consumer dispute is entered into the CDIS (internal dispute system at RPM) an update is automatically transmitted to

3

credit bureaus indicating the account is in dispute. (DSOF ¶28). RPM's General Counsel testified that RPM did not report Goss's Direct TV debt as "disputed" because Goss never disputed the account. (DSOF ¶26).[2]

## ANALYSIS

"[T]he FDCPA aims 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 948 (7th Cir. 2011) (quoting 15 U.S.C. § 1692(e)). To establish a claim under the FDCPA, a plaintiff must prove that (1) defendant qualifies as a "debt collector" as defined in § 1692a(6), (2) defendant took the actions of which plaintiff complains "in connection with the collection of any debt," and (3) the actions violated one of the FDCPA's substantive provisions. *See Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-86 (7th Cir. 2010) (internal quotations omitted). Only the third element is at issue in this case.

---

[2] RPM filed "Objections to Plaintiff's Evidence" which objects to four of Goss's Rule 56.1 statements (Dkt. 30). This document was submitted in addition to and separate from RPM's Rule 56.1 response to Goss's Rule 56.1. Local Rule 56.1(b)(3) requires "a concise response to the movant's statement that shall contain" among other things "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3). Thus RPM's "Objections to Plaintiff's Evidence" does not conform to Local Rule 56.1(b)(3). *See Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules.") (quotations and citations omitted). And in any event, the objections do not change the result in this case.

4

Goss claims that RPM violated Section 1962e(8), which states that the following is a violation of the FDCPA: "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Goss moves for summary judgment on her claim and on RPM's affirmative defense of bona fide error. She argues that RPM failed to report to Experian that her alleged debt was disputed when RPM knew or should have known that she disputed the debt. Goss further argues that RPM's affirmative defense fails because its failure to properly report her dispute was the result of a mistake of law, not fact, and even assuming the latter, RPM has no procedures in place to prevent such an error.

### I. Whether Goss Disputed the Alleged Debt

The parties agree about the content of the October 15, 2018 call. (*see* Dkt. 28 at 5). The only issue is whether RPM knew or should have known the debt was disputed, as that term is used in § 1692e(8), during that call. *See Bielawski v. Midland Funding LLC*, 2019 U.S. Dist. LEXIS 153908, at *10 (N.D. Ill. Sep. 10, 2019). In *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018), the Seventh Circuit held that defendant's failure to report plaintiffs' debts as disputed to credit reporting agencies was a "clear violation" of § 1692e(8) because plaintiffs' letter to defendant stated "the amount reported is not accurate." *Id*. at 346. Observing that the statute did not provide a definition of "dispute", the Seventh Circuit relied on the ordinary meaning as defined in the dictionary: "'to call into question or cast doubt upon.'" (*Id.*, quoting Merriam-Webster Dictionary). Thus "[w]hen plaintiffs said 'the amount

5

reported is not accurate,' they 'call[ed] into question' the amount PRA claimed they owed—in other words, they disputed the debt." *Id*.

Based on the October 15 call transcript, the Court agrees with Goss that RPM knew or should have known Goss was disputing the debt. Goss contends that there are two different points during the call where she disputed her debt: when she stated "she [doesn't] know this debtor and [doesn't] owe them a debt" and then when the RPM agent asked: "DirecTV, the balance of $417.42, right?" and Goss responded, "Um. No." (Dkt. 22 at 11). Although Goss did not use the same language at issue in *Evans,* 889 F.3d 337 ("the amount reported is not accurate"), by the end of the October 15 call, RPM should have known Goss had "call[ed] into question or cast doubt upon" the debt at issue.

RPM makes four arguments in response: (1) Goss's statements to the RPM representative before Goss identified herself "are not effective in communicating a dispute"; (2) during her deposition, Goss admitted she did not dispute the DirecTV debt; (3) the portion of the call Goss cites is taken out of context; and (4) Goss's statements did not communicate a dispute because she referred to RPM, not DirecTV, did not say she "disputed" the debt or words to that effect, and ended the call by saying she would look into the debt. (Dkt. 28 at 8-10).

As to RPM's first argument, RPM does not cite any authority to support its argument that Goss's statements to the RPM agent before Goss identified herself must be disregarded. And for all the reasons explained herein, the Court finds that the transcript shows that Goss disputed her debt. RPM also argues that Goss

6

admitted at her deposition that she did not dispute the debt. RPM cites to pages 40 and 61-62 of Goss's deposition to support this assertion. (DSOF ¶¶29-30; Exh. 5 to Flynn Decl. (Dkt. 31) (Goss Dep.)). On page 40, the first part of the questioning is about Goss moving her residence as it related to the DirecTV account and then RPM's attorney asked:

> Q. At the time you moved out of your residence that had the DirecTV account referenced in paragraph 10, was there a balance owed on the DirecTV account?
>
> A. No.

(Goss Dep. p. 40). It is not clear how Goss's answers on page 40 support RPM's contention that "Plaintiff admitted in deposition she did not tell the RPM representative during the first portion of the subject telephone call that she disputed the DirecTV account." (DSOF ¶29). Rather this testimony shows that Goss believed she did *not* owe any balance to DirectTV. On page 61-62 of the deposition, Goss admitted that she did not reference DirecTV by name in stating that she did not "know anything about that debt" and admitted that she did not use the word "dispute." But she also testified that "I disputed [the debt] by saying that I didn't recognize that debt." (Goss Dep. p. 62). Goss's testimony does not support RPM's assertion that Goss "admitted in deposition she did not tell the RPM representative during the second portion of the subject telephone call that she disputed the debt nor that she did not owe the debt." (DSOF ¶30).

Moreover, RPM does not cite any authority for the proposition that the Court should consider plaintiff's after-the-fact subjective assessment of whether she

7

sufficiently disputed her debt particularly where, as here, the Court can assess the content of the October 15 call. And instead of focusing on Goss's perspective, the Court must focus on RPM's conduct and what it knew or should have known. *Evans*, 889 F.3d at 347 (discussing "knows or should know" standard of § 1692e(8)); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("We must focus on the debt collector's misconduct").

RPM's third argument is that the portion of the call Goss cites is taken out of context. But Goss cited a portion of the transcript, she did not mischaracterize or misquote the transcript. In addition, the transcript of the call is undisputed by the parties and the Court has reviewed it in its entirety. Reviewing it in its entirety in a light most favorable to RPM, the Court concludes that Goss disputed the debt at issue.

Finally, RPM argues that Goss did not dispute her debt because she did not say she "disputed" the debt or words to that effect, she referred to RPM, not DirecTV, and ended the call by saying she would look into the debt. It is well settled that a debtor need not say the word "dispute" to prove a § 1692e(8) claim. *Evans*, 889 F.3d at 347. Further, statements ranging from "I don't owe that balance", "I don't owe that much", "[o]kay, but I don't agree with that at all, I don't know how it got that high," and "[t]hat's wrong" have been found to be sufficient to dispute a debt. *See Eul v. Transworld Sys.*, 2017 U.S. Dist. LEXIS 47505, at *76 (N.D. Ill. Mar. 30, 2017) (collecting cases). Goss's statement "I don't know this Debtor [referring to RPM], and I don't owe them a debt" and responding to the question "DirecTV, the balance of

8

$417.42, right?" Goss's answer, "Um, no", shows that she was "call[ing] into question or cast[ing] doubt upon" the debt.

RPM's contention that she was not disputing the debt because she referred to RPM, not DirecTV, is not persuasive. ("It is plain to see that Plaintiff's remark that she did not 'owe a debt' was directed to RPM, which was indeed true." (Dkt. 28 at 11)). RPM does not cite any section of the FDCPA or case law stating that the debtor must name the correct creditor by name in order to dispute the debt. And once the RPM agent retrieved Goss's information, the call transcript shows, the agent knew that the debt that was the subject of the call was the DirecTV debt.

Goss's statements on the October 15 call begin by clearly disputing a debt. Once the RPM representative clarifies that the debt involves DirecTV in the amount of $417.42, Goss reaffirms that "no. I don't know anything about that debt". She disputes that debt for purposes of § 1692e(8). *See Evans*, 889 F.3d at 347 (the standard of § 1692e(8) "depends solely on the debt collector's knowledge that a debt is disputed, regardless of how that knowledge is acquired.") (citation and quotation omitted). *See also Centeno v. LVNV Funding, LLC*, 2019 U.S. Dist. LEXIS 84271, at *8 (N.D. Ill. May 20, 2019) (although plaintiff's counsel could have used more precise language, whether letters could be read as disputing the debt or the accuracy of the credit reporting agencies' reports did not matter, because "under either reading, Plaintiffs call into question the reported debt."). Moreover, in contrast to other cases where debtors disputed how *much* they owed, here, Goss was disputing that she owed *any* debt *at all*.

9

RPM argues Goss did not dispute the debt because at the end of the call she stated that she would "check [her] records and see". RPM believes this created ambiguity about whether she was disputing the debt. The *Evans* Court rejected a similar argument in a footnote. PRA observed that the letter asserting that the "the amount reported is not accurate" also stated: "This [debtor] regrets not being able to pay"; and "If their circumstances should change, we will be in touch." 889 F.3d at 346, n. 7. PRA's intimation that the debtors' seeming admission that they owed the debt and would make attempts to pay later did not change the fact that "PRA must follow § 1692e(8)'s clear directive." *Id*. Similarly here, Goss's statement in light of the totality of her other statements on the call and "§ 1692e(8)'s clear directive", RPM should have considered the debt disputed.

## II. RPM's Affirmative Defense

Goss argues that RPM cannot meet its burden to prove its bona fide error affirmative defense. (Dkt. 35 at 4). RPM argues that Goss "fails to prove with undisputed facts that RPM is not entitled to allege the 'Bona Fide Error' defense." (Dkt. 28 at 13). RPM contends that any alleged violation was unintentional, a mistake of fact, not a mistake of law, and it has policies and procedures in place to avoid any such FDCPA violation. (*Id*. at 14-15).

The bona fide error defense "'does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute.' In other words, 'a defendant can invoke the bona fide error defense only if it claims it made an error of *fact*, not an error of *law*.'" *Abdollahzadeh v. Mandarich Law Grp.*,

10

LLP, 922 F.3d 810, 815 (7th Cir. 2019) (emphasis in original) (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.,* 559 U.S. 573, 604-05 (2010) and *Evans*, 889 F.3d at 349). The only error Goss complains of is RPM failing to interpret her statements as a "dispute." That is an error of law. *See Evans*, 889 F.3d at 350 (defendant's incorrect belief that plaintiff's statement was not a "dispute" under § 1692e(8) was a mistake of law). *See also Clanton v. Midland Funding, LLC,* 2019 U.S. Dist. LEXIS 167670, at *20 (N.D. Ill. Sep. 30, 2019) (defendant did not identify "any qualifying clerical or factual error that resulted in its FDCPA violation" such as if defendant "lost Clanton's letter before opening it, or if although MCM read the letter, it somehow missed the sentence disputing Clanton's debt."); *Cf. Abdollahzadeh,* 922 F.3d at 815 ("[Defendant's] factual mistake—using the wrong date of last payment in its statute-of-limitations analysis—resulted in unintentional violations of the Act despite reasonable procedures to prevent errors of this type.").

Because there is no evidence from which a reasonable jury could find that RPM made an error of fact, judgment as a matter of law in favor of Goss on RPM's defense of bona fide error is warranted.

### III. RPM's Arguments about Goss and Her Counsel

RPM argues that Goss's pursuit of this case has been in "bad faith" and her counsel has "repeatedly been adjudicated as bad actors." (Dkt. 28 at 4). In the FDCPA, Congress "installed a safety valve against truly abusive litigation" upon a finding by the court that the action was brought in bad faith. *Francisco v. Midland Funding, LLC,* 2019 U.S. Dist. LEXIS 42349, at *9 (N.D. Ill. Mar. 15, 2019) (citing 15 U.S.C. §

11

1692k(a)(3)). RPM has provided no evidence that would lead the Court to find that this action was brought in bad faith.

RPM argues that Goss's inconsistent testimony about when she first talked to her lawyers in this case and the fact that she called multiple credit reporting agencies on the same day shows that she was involved in a "call baiting scheme." (Dkt 28 at 7, 15). But as Goss points out, her inconsistent deposition testimony about her first contact with her lawyers appears to be more a function of her lack of memory than concealing any bad faith conduct. And the records of her multiple calls to credit reporting agencies, without more, does not show any "scheme."

Although RPM does not use the term "unclean hands", that is essentially the argument it makes by focusing on the conduct of Goss and her counsel. But as a court in this district recently explained:

> [T]o the extent this is intended to be an "unclean hands" defense, this Court agrees with other courts that such a defense is unavailable under the FDCPA. This is because, as the Seventh Circuit has repeatedly explained, "[n]o section of the [FDCPA] requires an inquiry into the worthiness of the debtor, or purports to protect only 'deserving' debtors." Rather, "the sole wrong intended to be remedied by the FDCPA is debt collector abuse."…An unclean hands defense, which focuses on the debtor's deeds, is inconsistent with the FDCPA's singular focus on the conduct of the debt collector.

*Bielawski,* 2019 U.S. Dist. LEXIS 153908, at *15-16 (internal citations and quotations omitted). Indeed violations of § 1692e(8) "do not depend on why the false communication was sent." *Francisco,* 2019 U.S. Dist. LEXIS 42349, at *3 (noting that the Seventh Circuit and courts in this district "have repeatedly rebuffed debt collectors' attempts to raise defenses or exceptions based on the consumer's purported

12

misconduct."). *See also Clanton*, 2019 U.S. Dist. LEXIS 167670, at *23 (rejecting unclean hands defense where defendant argued plaintiff's counsel encouraged plaintiff to send the dispute letter knowing it would lead to the FDCPA violation).

RPM relies on *Irvin v. Nationwide Credit & Collection, Inc.,* 2019 U.S. Dist. LEXIS 158167 (N.D. Ill. Sep. 17, 2019). In that case, plaintiffs' counsel used a different fax number for defendant from the one listed on their clients' collection notices. They did so despite knowing the correct fax number, which plaintiffs' counsel had used before for other clients. The court, citing three other cases in which the same plaintiffs' counsel used the same tactic, concluded that "plaintiffs' attorneys' actions were designed to avoid defendant's procedures reasonably adapted to avoid errors, for the purpose of manufacturing a lawsuit." 2019 U.S. Dist. LEXIS 158167 at *11. There is no such evidence in this case. As another court has noted, even if an "animating purpose behind the suit may have been to obtain damages and attorneys' fees", "'it is not improper to file a non-frivolous claim in the hope of getting paid.'" *Duarte v. Midland Funding, LLC*, 2019 U.S. Dist. LEXIS 31983, at *17 (N.D. Ill. Feb. 27, 2019) (quoting *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003)).

In sum, RPM has not shown that there are any disputed material facts that must be decided at trial. However, there is a remaining issue of Goss's damages.

### IV.   Damages

RPM contends that Goss does not identify any actual damages she suffered. (Dkt. 28 at 12). Goss responds that her summary judgment motion is limited to RPM's liability for the FDCPA violation. (Dkt. 35 at 12).

Successful plaintiffs in FDCPA actions are entitled to actual damages, costs, and reasonable attorney's fees, as well as statutory damages of up to a $1,000. *Jerman,* 559 U.S. at 578. In her complaint, Goss seeks actual and statutory damages and costs and reasonable attorneys' fees. (Compl. Dkt. 1, pp. 4-5). However she has not moved for summary judgment on damages, nor has RPM cross-moved on the issue of damages.[3] Therefore despite resolving liability on summary judgment, the issue of damages, whether actual and/or statutory, remains. The Court recognizes that "[t]he FDCPA provides for trial by jury in determining statutory . . . damages." *Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 896-99 (7th Cir. 1998). As discovery is closed (Dkt. 19) and this Court has ruled on the issue of liability, the Court believes that this stage of the case is a good opportunity for the parties to confer about settlement.

## CONCLUSION

For the stated reasons, Plaintiff Karice Goss's motion for summary judgment [21] is granted.

The parties are to confer regarding settlement. In discussing settlement, plaintiff is to be mindful that discovery is closed and she is limited to information she produced regarding actual damages. The parties are to file a joint status report by May 20, 2020 regarding the status of settlement discussions and whether a settlement conference will be necessary. (Please note this requirement and deadline take the

---

[3] *See Richardson v. Diversified Consultants, Inc.*, 2019 U.S. Dist. LEXIS 118786, at *9 (N.D. Ill. July 17, 2019) (noting that courts consistently have held that actual damages are not required to establish an FDCPA claim).

place of the status report requirement in paragraph 5 set in the Third Amended General Order).

E N T E R:

Dated: May 7, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge